UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., ET AL., § § §<br>   *Plaintiffs*, § §<br>v. § § Civil Action No.  SA-16-CV-394-XR<br>CATHERINE LIANZA BENTLEY, § §<br>individually and d/b/a LONGBRANCH § §<br>LOUNGE a/k/a, LONGBRANCH § §<br>SALOON, § §<br>   *Defendant*. § | |

## ORDER

On this date, the Court considered Plaintiffs' Motion for Summary Judgment (docket no. 22). No response has been filed. After careful consideration, the Court will GRANT the motion.

## BACKGROUND

Plaintiff Broadcast Music, Inc. ("BMI") and others initiated this lawsuit by filing a complaint on April 25, 2016, against Defendant Catherine Lianza Bentley individually and d/b/a Longbranch Lounge or Longbranch Saloon ("Defendant"), alleging Defendant infringed the copyrights of twelve musical compositions at Defendant's business, Longbranch Saloon, located at 817 N. Main, Boerne, Texas. Docket no. 1 at 12. BMI has been granted the right to license the public performance rights to musical compositions from numerous musicians and composers in its repertoire. Docket no. 22 at 2. BMI issues licenses to bars, restaurants, hotels and other establishments granting these establishments the right "to publicly perform a repertoire of 10.5 million copyrighted musical works on behalf of the copyright owners of these works." *Id.* BMI

1

alleges Defendant committed copyright infringement by performing or causing to be performed at Longbranch Saloon, without a license, twelve separate musical compositions contained in BMI's repertoire. The other plaintiffs "are the copyright owners of each of the twelve individual musical compositions" that form the basis for this lawsuit. *Id*. at 2. Plaintiffs now seek summary judgment, including statutory damages, costs, reasonable attorney's fees, and a permanent injunction. Docket no. 22-1 at 6–7.

According to the undisputed summary judgment evidence, Defendant previously held the required license that permitted her to perform music from BMI's repertoire at the Longbranch Saloon, but the license was cancelled in 2007. *Id.* at 3. After Defendant's license was terminated, BMI sent Defendant multiple letters beginning on January 24, 2007, informing her that her license expired and emphasizing the possibility of litigation if she performed BMI-licensed musical compositions without the required license. Docket no. 22-5 at 2. BMI sent a total of 32 letters between May 2011 and July 2014 and made numerous telephone calls to Defendant, informing her of the applicable copyright law and requesting that Defendant renew her license. Docket no. 22-1 at 3. Defendant did not respond to any of BMI's letters during this time period and never renewed her license. *Id.*

On March 30, 2012, BMI sent Defendant a cease and desist notice, demanding that she "immediately cease all use of BMI-licensed music" at her establishment. Docket no. 22-5 at 15. BMI then sent fifteen follow-up letters reminding Defendant that the cease and desist notice remained in full effect. *Id.* at 16–30. Defendant did not respond to any of BMI's correspondence concerning the March 30, 2012 cease and desist notice and did not renew her license with BMI.

On June 13, 2014, a BMI investigator visited Defendant's establishment. Docket no. 22-1 at 3. The BMI investigator made audio recordings of the music that Defendant performed, or caused to be performed at her establishment. *Id.* The investigator turned the recordings over to BMI's audio experts. *Id.* The audio experts concluded that Defendant performed, or caused to be performed, twelve separate musical compositions from BMI's repertoire, without a license, on the evening of June 13, 2014. *Id.*

After concluding Defendant performed music from the BMI repertoire without a license, BMI sent Defendant a letter informing her that performing music from the BMI repertoire without a license infringes on BMI's copyright. Docket no. 22-5 at 31. In the letters to Defendant, BMI outlined the steps Defendant could take to renew her license, which would allow Defendant to perform musical compositions from the BMI repertoire at Defendant's establishment under the terms of the licensing agreement. *Id.*

As noted, Plaintiffs then filed this lawsuit in April 2016. On August 11, 2016, Plaintiffs filed a Motion for Default Judgment against Defendant. Docket no. 17 at 1. They argued that because Defendant's answer was due on June 2, 2016, and no response from Defendant had been filed, Plaintiffs were entitled to a default judgment. *Id.* at 2. Defendant answered on September 6, 2016. Docket no. 21 at 1. In her answer, she admits many of Plaintiffs' allegations, but she denies that she performed, or caused to be performed, the listed musical compositions at her establishment. Docket no. 21 at 1–3. As a result of Defendant's September 6, 2016 Answer, this Court dismissed the Motion for Default Judgment as moot. On October 24, 2016, Plaintiffs filed a Motion for Summary Judgment against Defendant on all claims. Docket no. 22 at 1. Defendant has not filed a response to Plaintiffs' Motion for Summary Judgment.

**APPLICABLE LEGAL STANDARD**

Summary judgment should be rendered if the pleadings, discovery and disclosure materials on file, and any sworn affidavits show no genuine issues of material fact exist, and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(C). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 164. If the nonmoving party fails to offer evidence supporting or addressing a fact issue, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" FED. R. CIV. P. 56(e)(3).

When considering unopposed motions for summary judgment, a court may not grant summary judgment solely because the motion is unopposed. FED. R. CIV. P. 56(e)(3); s*ee also Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule."). However, if a nonmoving party fails to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed. FED. R. CIV. P. 56(e)(2). Such undisputed facts may form the basis for a summary judgment.

## DISCUSSION

### I. Elements of Public Performance Copyright Infringement

A copyright owner holds the exclusive right to publicly perform copyrighted material "by means of digital audio transmission." 17 U.S.C. § 106(4), (6). In order to prevail in a copyright infringement suit where the plaintiff claims the defendant publicly performed plaintiff's copyrighted musical works without authorization, the plaintiff must prove five elements: "(1) originality and authorship of the copyrighted works involved; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the copyrighted works involved; (4) public performance of the compositions involved; and (5) lack of authorization for public performance." *Broadcast Music, Inc. v. Neath Abbey Corp.*, Ltd., No. 5:12-CV-146-C, 2014 WL 12577583, at *2 (N.D. Tex. Apr. 15, 2014).

#### A. Originality and Authorship of Copyrighted Musical Compositions

Defendant admits to the originality and authorship of the copyrighted musical compositions that form the basis of this suit. Docket no. 21 at 1–3. BMI acts on behalf of the original composers and proprietors of the copyrighted musical compositions that form the basis for this cause of action. Docket no. 22-6 at 2. BMI acquired the right to act on behalf of the original composers of the twelve musical compositions when the composers placed their original musical compositions in the BMI repertoire. *Id.* Once a musical composition is in the BMI repertoire, BMI has the right to grant licenses on behalf of the composers and pursue copyright infringement claims against anyone who performs copyrighted musical compositions without a license. Plaintiffs satisfy the first element of the cause of action.

### B. Compliance with Formalities of the Copyright Act

Defendant admits that Plaintiffs complied with the formalities of the Copyright Act. Docket no. 21 at 1–3. In a suit for copyright infringement, the proper registration of the copyrighted material "constitute[s] prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C.A § 410(c). Plaintiffs produced evidence showing compliance with federal regulations and formalities required by the United States Copyright Office. Docket no 1-1 at 2–6. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991) ("[A] plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit."). This evidence includes the copyright registration number and the date of copyright for each of the twelve works performed at Defendant's establishment on June 13, 2014. Docket no 1-1 at 2–6. The evidence also includes an affidavit from attorney John Elwood, in which Elwood states that the rights to the musical compositions that form the basis for this dispute were properly registered with the United States Copyright Office. Docket no. 22-6 at 2. Plaintiffs' evidence demonstrates compliance with federal copyright regulations and therefore satisfies the second element of the cause of action.

### C. Proprietary Rights to the Copyrighted Musical Compositions

Defendant further admits that Plaintiffs have proprietary rights to the copyrighted musical compositions in this suit. Docket no. 21 at 1–3. BMI states that it possesses the right to license the twelve pieces of musical composition in this suit. Docket no. 22-1 at 5. BMI's proprietary right to the musical compositions is further supported by BMI Attorney Ellwood's affidavit. Docket no. 22-6 at 2. Ellwood explains that BMI is in the business of acquiring public

performance rights and then granting businesses, such as Defendant's lounge, the right to publically perform the musical compositions. *Id.* Plaintiffs demonstrated that they have the proprietary rights to the twelve pieces of musical compositions in this suit, satisfying the third element of the cause of action.

### D. Public Performance of the Musical Compositions

Plaintiffs claim that Defendant publicly performed, or caused to be public performed by a DJ and/or a karaoke machine, twelve copyrighted musical compositions from the BMI repertoire on the evening of June 13, 2014. Docket no. 22-1 at 3. The evidence includes a report from the investigator who visited Defendant's establishment on the evening of June 13, 2014 and observed the public performance of the twelve musical compositions in question, and made recordings of those performances. Docket no. 22-4 at 2. These performances included the digital transmission of the musical compositions through a karaoke machine. *Id.* The expert's report includes photos and audio recordings of the performances, in addition to notes about the performances. *Id.* at 19. The undisputed evidence contained in the investigator's report supports Plaintiffs' contention that Defendant performed, or caused to be performed, twelve different copyrighted musical compositions on the evening of June 13, 2014.

### E. Lack of Authorization to Publicly Perform

Plaintiffs provide substantial evidence that Defendant was aware of the required license needed to legally perform copyrighted works in the BMI repertoire, yet refused to maintain the proper license. BMI sent Defendant over thirty letters detailing her obligation to obtain a license in order to perform musical compositions from the BMI repertoire at her establishment. Docket no. 22-1 at 3. BMI's evidence includes copies of the letters sent to Defendant over the course of

seven years. Docket no. 22-5 at 2. The letters show BMI's repeated attempts to make contact with Defendant, including numerous opportunities for Defendant to resolve any copyright infringements without litigation through the acquisition of the proper license. Defendant has not produced evidence that she took any action or responded to any of BMI's letters. Defendant's failure to obtain the required license to publicly perform musical compositions from the BMI repertoire satisfies the fifth element of the cause of action.

## II.   Recovery

Plaintiffs seek statutory damages, costs, and reasonable attorney's fees, and a permanent injunction against Defendant for future instances of copyright infringement.

### A. Statutory Damages

A plaintiff in a copyright infringement suit may choose to pursue statutory damages for copyright infringement, even if the statutory damages amount to less than the actual damages the plaintiff experienced. *Broadcast Music Inc., v. Xanthas, Inc.* 855 F.2d 233, 236 (5th Cir. 1988). Statutory damages for copyright infringement range from $750 to $30,000 per instance of infringement. 17 U.S.C. § 504(c). A court may award any amount of statutory damages it considers just, so long as the award does not exceed the statutory maximum. *Id.*

Plaintiffs seek statutory damages in the amount of $2,500 per instance of infringement, for a total of $30,000. Docket No. 22-1 at 6. District courts have broad discretion in determining what level of statutory damages to impose in a copyright infringement suit. *See Xanthas* 855 F.2d at 237 ("[T]he court enjoys wide discretion in setting the amount of damages for each work infringed and hence the final amount of damages."). The Fifth Circuit in *Broadcast Music, Inc. v. Hobi, Inc*. upheld the district court's award of statutory damages in the

amount $7,000, $1,000 for each instance of unauthorized performance of copyrighted music. *Broadcast Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1171 (5th Cir. 1994). In *Broadcast Music, Inc. v. Tex Border Mgmt.*, 11 F. Supp. 3d 689 (N.D. Tex. 2014), the district court awarded $20,000 for each of the nine musical compositions the defendant infringed, an amount less than twice the unpaid licensing fees. In *Broadcast Music, Inc. v. Olivia's Corp.*, No. 3:13-CV-00606-P, 2014 U.S. Dist. WL 12603108 (N.D. Tex. June 19, 2014), the district court awarded $3,000 for each instance of infringement of a musical composition owned by the plaintiff. Plaintiffs assert that Defendant's unpaid licensing fees from May 2011 to July 2014 would have been approximately $18,000. Plaintiffs' request for statutory damages falls below the maximum amount permitted under the statute and is consistent with other awards of statutory damages in similar cases in the Fifth Circuit. Taking into account both restitution and deterrence, the Court finds $30,000 ($2,500 per musical composition infringed) to be an appropriate award.

### B. Costs and Attorney's Fees

Plaintiffs in a copyright infringement suit may also recover full costs and reasonable attorney's fees. 17 U.S.C. § 505. The total amount of costs and attorney's fees a plaintiff may recover is left to the discretion of the court. *Id.* The Supreme Court has held that courts deciding requests for attorney's fees and costs in a copyright infringement case "must take into account a range of considerations." *Kirtsaeng v. John Wiley & Sons, Inc.* 136 S. Ct. 1979, 1984 (2016). The Court held that district courts "should give substantial weight to the objective reasonableness of the losing party's position, while still taking into account all other circumstances relative to the granting fees." *Id.* at 1981–82.

Plaintiffs seek $14,900 in costs and attorney's fees. Docket no. 22-1 at 8. They support the reasonableness of this request with an affidavit from counsel Arthur Gollwitzer III. Docket no. 22-7 at 1. In his affidavit, Gollwitzer provided his hourly rate ($590) and the hourly rate of his associate ($280) and states his firm is representing Plaintiffs on a task-based, flat-fee, pre-negotiated schedule based on tasks required to prosecute this action. *Id.* at 2. His affidavit further states that Plaintiffs incurred costs and reasonable attorney's fees in the amount of $14,900, in line with the flat-fee schedule, including the $400 filing fee for this case. *Id.*

Defendant has not provided evidence to support the reasonableness of her position. Defendant was aware of the requirement to obtain a BMI license in order to legally perform copyrighted musical compositions at her establishment, yet she failed to renew her license with BMI after her license expired. Further, Defendant did not respond to BMI's ongoing efforts to discuss the renewal of her license. The Court finds that the requested fees are reasonable considering that BMI has filed a complaint, motion for default judgment, and a motion for summary judgment to prosecute this case.

### C. Permanent Injunction

Finally, Plaintiffs seek a permanent injunction against future copyright infringement by Defendant. Docket no. 22-1 at 8. Permanent injunctions are available to plaintiffs in copyright infringement suits when the court deems an injunction reasonable in order to prevent the further infringement of the plaintiff's copyrights. 17 U.S.C. § 502.

Plaintiffs submitted evidence showing that Defendant has continued to perform music from the BMI repertoire at her business without a license, thus infringing on Plaintiffs' copyrights over a period of many years. Docket no. 22-1 at 9. Defendant's continued

infringement of Plaintiffs' copyright persists despite extensive efforts by BMI to curb the infringement. *Id.* As a result of Defendant's refusal to cease her performance of musical compositions without a license, a permanent injunction is appropriate to prevent Defendant from infringing in the future.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment (docket no. 22) is GRANTED. The Court will separately issue a Judgment in favor of Plaintiffs for copyright infringement damages in the amount of $30,000 and $14,900 for costs and reasonable attorney's fees, plus post-judgment interest. A permanent injunction will also be issued against Defendant enjoining her from publicly performing, or causing to be publicly performed, without a license from BMI, any original musical compositions contained in the BMI repertoire at her establishment.

SIGNED this 28th day of February, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE